UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| JESSICA NORRES | ) | CASE NO. |
| c/o Caryn Groedel & Associates Co., | ) | |
| LPA | ) | JUDGE |
| 31000 Woodall Drive | ) | |
| Cleveland, OH  44139 | ) | **PLAINTIFF'S COMPLAINT** |
| | ) | |
| Plaintiff, | ) | (Jury Demand) |
| | ) | |
| v. | ) | |
| | ) | |
| NOVARTIS PHARMACEUTICALS | ) | |
| CORP. | ) | |
| Forum 1 | ) | |
| Novartis Campus | ) | |
| CH-4056 Basel | ) | |
| Switzerland | ) | |
| | ) | |
| NOVARTIS AG | ) | |
| NOVARTIS CORPORATION | ) | |
| NOVARTIS PHARMACEUTICALS | ) | |
| CORP. | ) | |
| 11460 Johns Creek Pkwy | ) | |
| Duluth, GA  30097-1518 | ) | |
| | ) | |
| *PLEASE SERVE*: | ) | |
| Corporation Service | ) | |
| Company | ) | |
| 251 Little Falls Drive | ) | |
| Wilmington, DE  19808 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| HAL HENDERSON | ) | |
| 2505 Rocky Mountain Rd. | ) | |

Marietta, GA  30066              )
                                 )
   and              )
                                 )
LOLA KASSIM                      )
220 East Hanover Avenue          )
Morris Plains, N.J.  07950       )
                                 )
           Defendants.   )

## COMPLAINT

Plaintiff, Jessica Brooke Norris, by and through counsel, for her claims

against Defendants, states and alleges the following.

## NATURE OF ACTION

1.     This action arises under Title VII of the Civil Rights Act of 1964 as

amended ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, and the common laws of the

South Carolina.

## PARTIES

2.     Plaintiff, a female resident of South Carolina, was an employee of

Defendants, serving in the role of Senior Biologic Sales Specialist ("Sales

Specialist") (commonly known as a "Sales Representative" or "Sales Rep"), from

February 22, 2016, to February 8, 2019.

3.     Defendant Novartis AG is a worldwide pharmaceutical company with

subsidiaries that include Defendant Novartis Corporation, which is responsible for

2

Novartis' operations in the United States, and Novartis Pharmaceuticals, which was Plaintiff's direct employer.  These Defendants are "employers" as that term is defined in 42 U.S.C. § 2000e.

4.      At all relevant times during Plaintiff's employment, Defendant Hal Henderson, a resident of Georgia, was the Atlanta Dermatology Area Business Leader for Novartis Pharmaceuticals, overseeing approximately eight (8) sales representatives, including Plaintiff, and he had control over the terms and conditions of Plaintiff's employment.

5.      At all relevant times during Plaintiff's employment, Defendant Kassim, a resident of New Jersey, was Novartis Pharmaceuticals' Associate Human Resources ("HR") Director for the entire U.S., overseeing approximately 400 Novartis employees, was responsible for personnel decisions involving Defendant Henderson's subordinates, including Plaintiff, and had control over the terms and conditions of Plaintiff's employment.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.  Plaintiff is a South Carolina resident, Defendant Henderson is a Georgia Resident, Defendant Kassim is a New Jersey resident, and Defendant Novartis is a Delaware corporation with headquarters in Duluth, Georgia.  Therefore,

jurisdiction is appropriate in the Atlanta Division of this Court.  The amount in

controversy, exclusive of interest and costs, exceeds Seventy-Five Thousand

Dollars ($75,000.00).  Moreover, pursuant to 28 U.S.C. § 1331, this Court has

jurisdiction over Plaintiff's Title VII claim, which arises under the laws of the

United States.

7.      Venue properly lies in this Court pursuant to 28 U.S.C § 1391 because

most of the events and/or conduct giving rise to this action occurred in this judicial

district.

8.      All conditions precedent to the institution of this lawsuit have been

satisfied.  Specifically, on July 10, 2019, Plaintiff filed a Charge of Discrimination

with the Equal Employment Opportunity Commission ("EEOC") (Ex. 1), on

January 6, 2021, the South Carolina Human Relations Commission issued a

Determination of Probable Cause (Ex. 2) and on April 15, 2022, the EEOC issued

Plaintiff a Notice of Right to Sue (Ex. 3, p.2), and this action is filed within 90

days of the date of the Right to Sue.

## **FACTUAL ALLEGATIONS**

9.      In February 2016, Plaintiff began her employment with Novartis,

where she worked as a Senior Biologic Sales Specialist ("Sales Specialist")

(commonly known as a "sales representative" or "sales rep"), selling the specific biological pharmaceutical product of Cosentyx .

10.     In her capacity as a Sales Specialist, Plaintiff was responsible for selling Novartis' biologic pharmaceutical product/medication in her sales region, which consisted of western North Carolina and upstate South Carolina.

11.     Novartis, which required Plaintiff to meet specific sales goals, fdid not give Plaintiff credit for a sale until:  (a) her customers (doctors and their staff) prescribed Plaintiff's assigned product/medication to a patient, (b) a nurse educated the patient about the medication, and (c) the medication was shipped to the patient.

12.     For this reason, Plaintiff's success as a sales representative, and the patients' success in accessing the medication they needed, and which their doctors had prescribed for them, were contingent upon a nurse communicating with the sales representatives' physician accounts, and with patients to whom Plaintiff's physician accounts had prescribed the products Plaintiff promoted.

13.     In early 2018, Plaintiff learned that Abby Drury, the Registered Nurse employed by Novartis who Novartis had assigned to work on Plaintiff's accounts, was not adequately communicating with Plaintiff's physician accounts and their staff.

14.     Plaintiff also learned in early 2018 that Ms. Drury had prepared false medical documents, including notes stating that she had communicated with Plaintiff's physician accounts when she had not; stating that she had tried unsuccessfully to communicate with patients when she had not; and Ms. Drury denied that patients who in fact had been assigned to her, were assigned to her.

15.     Because Novartis conditioned Plaintiff's sales credit upon a Novartis nurse onboarding patients to, and educating them on, the Novartis medication(s) they had been prescribed by Plaintiff's customers (physicians and their staff), Ms. Drury's failure to communicate with Plaintiff's physician customers and their patients not only adversely affected Plaintiff's sales performance, but also endangered patients who suffered from autoimmune diseases, by failing to onboard their medication, which precluded them from accessing/obtaining the medications they needed.

16.     Ms. Drury also failed to educate the patients regarding the medications their physicians had prescribed for them.

17.     On numerous occasions after discovering the adverse information stated above, Plaintiff reported Ms. Drury's misconduct to Defendant Hal Henderson, who, at the time, was Novartis' Atlanta Area Business Leader and

Plaintiff's direct manager, and to Lola Kassim, Novartis' Associate Human
Resources ("HR") Director for the entire U.S.

18.     In early 2018, Plaintiff reported Ms. Drury's conduct to Defendant
Henderson, but rather than addressing Plaintiff's concerns, Defendant Henderson
admonished Plaintiff to "focus on sales" and not raise the issue with him again.

19.     In approximately March 2018, because Ms. Drury's malfeasance
continued, and because Defendant Henderson had instructed Plaintiff to not discuss
the matter with him again, Plaintiff reported Ms. Drury's conduct to Defendant
Kassim, who instructed Plaintiff to document her concerns send the documentation
to her (Defendant Kassim) and her (Plaintiff's) manager, Defendant Henderson,
and to address her concerns directly with her manager, Defendant Henderson.

20.     On March 16, 2018, adhering to Defendant Kassim's directive,
Plaintiff told Defendant Henderson that she had spoken with Defendant Kassim,
and that Defendant Kassim had instructed her to document Ms. Drury's
misconduct.  In response, Defendant Henderson told Plaintiff she should not have
involved the HR department.

21.     After, and at least in part due to, Plaintiff's March 16, 2018
conversation with Defendant Kassim, Defendant Henderson began retaliating
against Plaintiff by, *inter alia*, downgrading her performance reviews and

preparing negative, hyper-critical, Field Coaching Reports ("FCRs") for her,
falsely claiming that Plaintiff's "Sales Competencies" had fallen "Below
Expectations" in several categories that he had never before brought to Plaintiff's
attention as being problematic.

22.     On April 5, 2018, Plaintiff sent Defendants Henderson and Kassim the
documents that Defendant Kassim had instructed Plaintiff to send, which
confirmed the lack of activity on Plaintiff's accounts after patients received
prescriptions from their physicians (Plaintiff's customers), and which implicated
Ms. Drury and her direct supervisor, Lynne Bouffard.

23.     On May 18, 2018, Ana Henderson, a Novartis HR "Partner" for
Novartis' Market Access and Patient Specialty Services, informed Plaintiff that she
had been assigned to investigate Plaintiff's reports.

24.     During Plaintiff's subsequent conversations with Ana Henderson,
Plaintiff expressed her concerns regarding he lack of neutrality in connection with
the "investigation", because:  (a) Ana Henderson was the H.R. Lead for Novartis'
nurses, (b) the issues Plaintiff reported concerned a nurse, and (c) Ms. Henderson
failed and refused to address those concerns.

25.     On August 3, 2018, Plaintiff received the May 2018 Performance
Ranking Report for Novartis' salesforce, which reflected that Defendant

Henderson's district had the lowest sales in the country.  Plaintiff's territory,

however, was one of two territories in the district identified as exceeding 100%

goal attainment in all sales metrics — despite Ms. Drury's misconduct having an

adverse impact on Plaintiff's sales.

26.     On August 22, 2018, Ana Henderson informed Plaintiff that she had

investigated Plaintiff's reports, that her claims could not be validated, and that the

investigation was closed.

27.     On August 24, 2018, Defendants Henderson and Kassim retaliated

against Plaintiff for reporting Ms. Drury by placing her on a 90-day Performance

Improvement Plan ("PIP"), and informing her that *her successful 2018 year-to-

date sales results* would be excluded from her sales total when they measured her

sales performance at the end of the 90-day PIP.

28.     On August 28, 2018, Plaintiff reported Defendant Henderson's

retaliation to Novartis' Business Practices Office ("BPO"), a forum to which

Novartis employees are supposed to be able to report violations of the Novartis

Code of Conduct without fear of reprisal.

29.     On December 5, 2018, Defendants extended Plaintiff's PIP for 60

days, even though they had told her numerous times that she was meeting her PIP

requirements.

30.     Novartis' December 2018 sales rankings showed Plaintiff's ranking as the 39th highest out of 139 reps who sold the same product as Plaintiff.

31.     In January 2019, Plaintiff's ranking improved from the 39th highest to the 32nd highest out of the 139 reps who sold the same product as Plaintiff.

32.     Nonetheless, on February 6, 2019, Defendant Henderson, and East Regional Sales Director Pete Julian, met with Plaintiff at a hotel in Greenville South Carolina, where they terminated her employment without explanation, which caused her, *inter alia*, to lose 1,500 unrestricted stock shares that would have vested in January 2020, which were valued in February 2019 at approximately $136,000.

33.     Pursuant to Novartis' written policies, employees lose their right to claim unrestricted stock shares that have not vested if (a) they are terminated, and/or (b) they receive a "1" performance rating.

34.     Also pursuant to Novartis' written policies, a "1" performance rating *may* be grounds for being placed on a PIP or terminated, at Novartis' discretion; although Novartis' policies and procedures allow employees to appeal a "1" rating *and* the forfeiture of restricted stock shares.

35.     Although Plaintiff never received a "1" rating, Defendants terminated her employment with no opportunity to appeal.

36.     Upon information and belief, Novartis afforded Plaintiff's similarly situated male counterpart, Novartis Sales Specialist Thomas John, two (2) opportunities to appeal a "1" rating, despite the fact that he performed significantly worse than Plaintiff, and was consistently ranked in the bottom 10% of the Novartis Sales Specialists selling the same product he sold.

## COUNT ONE

### (Gender Discrimination – Novartis Defendants)

37.     Plaintiff restates each paragraph above as if fully set forth herein.

38.     Plaintiff, a female, is a member of a protected class based on her gender, pursuant to 42 U.S.C. § 2000e-2.

39.     Plaintiff was, at all times relevant hereto, and still is, qualified for the position of Senior Biologic Sales Specialist at Novartis.

40.     Defendants subjected Plaintiff to gender discrimination by treating her significantly worse than her similarly situated male counterparts with respect to the terms and conditions of employment, at least in part based on her gender, by, *inter alia:* terminating her employment without giving her an opportunity to appeal the decision but giving her similarly situated male counterpart two appeal opportunities; and by terminating Plaintiff ostensibly for poor performance, but retaining Plaintiff's similarly situated, lower performing, male counterpart.

41.     Defendants' disparate and discriminatory treatment of Plaintiff was based, at least in part, on Plaintiff's gender, and constitutes gender-based discrimination in violation of Title VII.

42.     Defendants' conduct reflects an outrageous and conscious disregard for Plaintiff's rights, which had a great probability of causing, and did cause, Plaintiff to suffer substantial damages, thereby rendering Novartis liable for punitive damages.

43.     As a result of the foregoing actions and inactions of Defendants, Plaintiff has suffered damages, including lost wages and mental anguish, in an amount exceeding Seventy-Five Thousand Dollars ($75,000.00).

## COUNT TWO

### (Violation of Public Policy – All Defendants)

44.     Plaintiff restates each paragraph above as if fully set forth herein.

45.     There is a clear public policy, as manifested in state and/or federal constitutions, statutes, regulations, and/or common law, including S.C. Code Ann. § 40-33-110, which, *inter alia,* authorizes the South Carolina State Board of Nursing to revoke a nurse's license for falsifying or altering patient records.

46.   Defendants terminated Plaintiff at least in part because she opposed and reported what she reasonably believed to be violations of the law and harm to patients who were prescribed medication by her physician accounts.

47.   Taking adverse action against Plaintiff based, even in part, on her report of Ms. Drury's misconduct -- which posed a risk to patients and violated state regulations -- would jeopardize South Carolina's public policy.

48.   Defendants' acts of conspiracy, i.e., the combination between Defendants for the purpose of accomplishing an unlawful object, or lawful object by unlawful means, as described more fully in Count Five below, violates South Carolina's Code of Laws, Title 16, Crimes and Offenses, section 16-17-410; constitutes a felony; and violates South Carolina's public policy prohibiting such acts, as more fully described in Count Five below.

49.   Defendants lacked an overriding legitimate business justification for placing Plaintiff on a PIP, extending Plaintiff's PIP, and terminating Plaintiff's employment.

50.   Defendants' conduct reflects an outrageous and conscious disregard for Plaintiff's rights, which had a great probability of causing, and did cause, Plaintiff to suffer substantial damages, thereby rendering Defendants liable for punitive damages.

51.    As a result of the foregoing actions of Defendants, Plaintiff has
suffered damages, including but not limited to loss of wages and mental anguish, in
an amount exceeding Seventy-Five Thousand Dollars ($75,000.00).

## COUNT THREE

### (Retaliation – Novartis /Defendants)

52.    Plaintiff restates each paragraph above as if fully set forth herein.

53.    Plaintiff reported Ms. Drury's conduct and the danger posed by Ms.
Drury's misconduct to Plaintiff's direct manager, Hal Henderson, and to Lola
Kassim.

54.    After, and at least in part due to Plaintiff having reported Ms. Drury's
conduct to Hal Henderson and Lola Kassim, Defendant Henderson took adverse
employment actions against Plaintiff, including, *inter alia*, downgrading her
performance and preparing negative, hyper-critical FCRs, falsely claiming that
Plaintiff's Sales Competencies had fallen "Below Expectations" in several
categories, placing her on a 90-day PIP and deliberately excluding her *successful
2018 year-to-date sales*.  Defendant Henderson told Plaintiff he was going to have
to handle the Drury issue "differently" because she had involved H.R., and he
promptly started retaliating against Plaintiff by, *inter alia,* downgrading Plaintiff's

FCRs.  The Novartis Defendants condoned, aided, and abetted in these retaliatory acts.

55.     As a result, Plaintiff engaged in the protected activity of reporting Hal Henderson's retaliation to Novartis' BPO forum, which was supposed to be a way for employees to report violations of the Novartis Code of Conduct without fear of reprisal.

56.     Defendants knew Plaintiff had engaged in the protected activity of reporting Defendant Henderson's retaliation because, *inter alia*, Defendant Kassim spoke to Plaintiff about her report and told Plaintiff that she had spoken to Defendant Henderson about it.

57.     Due, at least in part, to Plaintiff's reporting of Defendant Henderson, Defendants extended Plaintiff's PIP for 60 days, and terminated her employment without advance notice or explanation.

58.     The retaliatory conduct described above was engaged in recklessly, maliciously, and intentionally, and violated Plaintiffs rights under Title VII.

59.     Defendants' conduct reflects an outrageous and conscious disregard for Plaintiff's rights, which had a great probability of causing, and did cause, Plaintiff to suffer substantial damages, thereby rendering Defendants liable for punitive damages.

60.     As a result of the retaliatory actions, Plaintiff suffered damages, including lost wages and mental anguish, in an amount exceeding Seventy-Five Thousand Dollars ($75,000.00).

## COUNT FOUR

### (Defamation - Defendant Henderson)

61.     Plaintiff restates each paragraph above as if fully set forth herein.

62.     As described above, Defendant Henderson published to Novartis' upper management and Defendant Kassim, among others, false and defamatory statements regarding Plaintiff, including on her performance reviews, her FCRs, and her PIP, that Plaintiff's performance was deficient.

63.     These statements were malicious, false, and meant to ensure the end of Plaintiff's career with Novartis.

64.     These defamatory statements caused Plaintiff to experience emotional upset, and they damaged her standing and reputation in the community and resulted in monetary damages relating to the loss of her job.

65.     Defendant Hal Henderson's words were of the kind that would discredit Plaintiff in the minds of any considerable and respectable class in the community.

66.     Defendant's conduct reflects an outrageous and conscious disregard for Plaintiff's rights, which had a great probability of causing, and did cause,

Plaintiff to suffer substantial damages, thereby rendering Defendant liable for punitive damages.

67.    As a result of these actions, Plaintiff has suffered damages, including lost wages and mental anguish, in an amount exceeding Seventy-Five Thousand Dollars ($75,000.00).

## COUNT FIVE

### (Civil Conspiracy - Defendants Novartis Pharmaceuticals, Henderson, and Kassim)

68.    Plaintiff restates each paragraph above as if fully set forth herein.

69.    Defendants Novartis Pharmaceuticals, Henderson, and Kassim had a common plan to commit the tortious acts of defaming Plaintiff and interfering with Plaintiff's employment relationship with Novartis and standing in the pharmaceutical industry.

70.    Said Defendants were all parties to the plan and worked toward their mutual goal of committing the tortious acts of defamation and damaging Plaintiff's standing in the pharmaceutical industry by making, and/or condoning the making of, false statements, in an effort to ensure the end of Plaintiff's career with Novartis and to harm her career and reputation in the pharmaceutical industry.

71.    Defendants conspired to make malicious and false statements about Plaintiff that they knew would cause Novartis to terminate Plaintiff.

72.     As a result of these wrongful actions, Plaintiff has suffered damages, including but not limited to the loss of her job, salary, stock options, health insurance, and retirement and other benefits, damage to personal and professional reputation, great strain, hardship, emotional distress, anxiety, humiliation, and embarrassment.

73.     Defendants' conduct reflects an outrageous and conscious disregard for Plaintiff's rights, which had a great probability of causing, and did cause, Plaintiff to suffer substantial damages, thereby rendering Defendants liable for punitive damages.

74.     As a result of these actions, Plaintiff has suffered damages, including lost wages and mental anguish, in an amount exceeding Seventy-Five Thousand Dollars ($75,000.00).

## DAMAGES

WHEREFORE, Plaintiff respectfully requests this Honorable Court:

A.     Order Defendants to make her whole by compensating her for her economic, emotional, and punitive damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00);

B.     Reimburse her for her lost wages in an amount to be proven at trial;

C.     Grant her the attorneys' fees, costs, and disbursements she has

incurred in pursuing her civil rights;

      D.      Award her pre- and post-judgment interest at the statutory rate; and

      E.      Grant such further and additional relief as this Court deems just and

proper.

      Respectfully submitted this 13th day of July, 2022.

> */s/ John P. Batson*
> John P. Batson
> Ga. Bar No. 042150
> *jbatson@aol.com*
> P.O. Box 3248
> Augusta, GA  30914-3248
> Phone:  706-737-4040
> Fax:      706-736-3391
> Counsel for Plaintiff

## **<u>JURY DEMAND</u>**

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted this 13th day of July, 2022.

> */s/ John P. Batson*
> John P. Batson
> Ga. Bar No. 042150
> *jbatson@aol.com*
> P.O. Box 3248
> Augusta, GA  30914-3248
> Phone:  706-737-4040
> Fax:      706-736-3391
> Counsel for Plaintiff

## <u>RULE 7.1D CERTIFICATE OF TYPE, FORMAT AND FONT SIZE</u>

Pursuant to Local Rule 7.1D of the United States District Court for the

Northern District of Georgia, the undersigned certifies that the foregoing

submission was computer-processed, double-spaced between lines,

used Times New Roman font of 14-point and complies with rules on margin size,

with 1.5 inches at the top and 1 inch for other margins.

Respectfully submitted this 13th day of July, 2022.

*/s/ John P. Batson*
John P. Batson
Ga. Bar No. 042150
*jbatson@aol.com*
P.O. Box 3248
Augusta, GA  30914-3248
Phone:  706-737-4040
Fax:      706-736-3391
Counsel for Plaintiff

EEOC Form 5 (11/09)

Ex. 1 p. 1 of 3

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974.  See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | 524-2019-01604 |

| South Carolina Human Affairs Commission | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone | Year of Birth |
|---|---|---|
| Ms. Jessica B Norris | (706) 338-6190 | |

| Street Address | City, State and ZIP Code |
|---|---|
| 108 Dove Tree Trl,  SUNSET, SC 29685 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| NOVARTIS PHARMACEUTICALS CORP. | 501+ | |

| Street Address | City, State and ZIP Code |
|---|---|
| 108 Dove Tree Trl,  Sunset,  SC 29685 | |

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE   ☐ COLOR   ☒ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN | Earliest: 09-15-2018   Latest: 02-08-2019 |
| ☒ RETALIATION   ☐ AGE   ☐ DISABILITY   ☐ GENETIC INFORMATION | |
| ☐ OTHER (Specify) | ☐ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I began my employment with Novartis Pharmaceuticals in February 2016.  My selling skills were consistently rated as either 'meets' or 'exceeds' expectations, and I was a top performer in the nation.  In September 2018, I reported to Lola Kassim, African American Human Resources Lead and Pete Julian, Regional Director, a complaint of retaliation and that I was being subjected to discrimination due to my race (Caucasian) and gender (female). I told Lola and Pete that, despite my sales performance at the time being top-tier -- in both my district AND my region -- I was being placed on a Performance Improvement Plan (PIP), with no justification or explanation, and discouraged from utilizing accrued PTO. I also noted that regardless my performance, I was the lowest paid representative on my team.  Following my report, not only did Lola Kassim retaliate against me, but so did my manager, Area Business Leader Hal Henderson (also African American), with threats, subjective and never-ending criticism of my work, shaming and ridiculing me in the presence of my colleagues & customers, and denying me recognition and compensation for my achievements. The 'coaching feedback' provided to me verbally & in Field Coaching Reports from Hal Henderson, was both demeaning and sexist. I was instructed to cry in front of clinicians to increase prescription count and to adjust my work attire in specific accounts to drive greater sales demand. Hal Henderson repeatedly used abusive language during our interactions (i.e. 'you're pathetic, I'm embarrassed for you, you infiltrate poison on to my team') and each time I reported these specific types of interactions to Lola Kassim in Human Resources, Pete Julian, & Employee Relations, I was informed that these

| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| **Digitally signed by Jessica Norris on 07-10-2019 06:32 PM EDT** | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

Ex. 1 p. 2 of 3

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974.  See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | 524-2019-01604 |

| South Carolina Human Affairs Commission | and EEOC |
|---|---|
| *State or local Agency, if any* | |

were merely 'coaching opportunities.' On January 23, 2019, I reported to the Director of Novartis Employee Relations that Hal Henderson and Lola Kassim were retaliating against me due to my prior report, which had created an extremely hostile working environment for me. On February 6, 2019, Hal Henderson and Pete Julian told me that my employment was terminated effective immediately -- as of February 8, 2019 -- giving me no reason or explanation. They offered me 8 weeks of severance pay in exchange for not suing Novartis. At the time of my termination, I was ranked #14 in the country out of 150 representatives in the company, nationwide, who held my position. Moreover, by lowering my performance scores and terminating me when they did, Novartis, in violation of ERISA, deprived me of 1,500 stock shares worth approximately $134,000 at the time, which would have vested in January of 2020, had I not been terminated through discrimination and retaliation. Also, Novartis' actions against me clearly illustrate its direct intent to not comply with its ERISA obligation, being that my last date of employment was 2 weeks shy of me vesting in 2 long-term retirement funds. Novartis also discriminated against me based on my gender by allowing my male comparator, Thomas John, to TWICE appeal decisions regarding losing his stock grants, but not allowing me to appeal the loss of my stock grants even once.

I believe I have been discriminated against based on sex, Female, race, White, and in retaliation for my complaints in violation of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| **Digitally signed by Jessica Norris on 07-10-2019 06:32 PM EDT** | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (*month, day, year*) |

Ex. 1 p. 3 of 3

PRIVACY ACT STATEMENT:  Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1.   FORM NUMBER/TITLE/DATE.  EEOC Form 5, Charge of Discrimination (11/09).

2.   AUTHORITY.  42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3.   PRINCIPAL PURPOSES.  The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4.   ROUTINE USES.  This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws).  Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination.  This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions.  A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5.   WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.  Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of.  Without a written charge, EEOC will ordinarily not act on the complaint.  Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed.  Charges may be clarified or amplified later by amendment.  It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA.  Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements.  You will be told which agency will handle your charge.  When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter.  Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings.  Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge.  Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

Ex. 2 p. 1 of 2



## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## Greenville Local Office

Landmark Building
301 North Main Street, Suite 1402
Greenville, SC  29601
Intake Information Group:  (800) 669-4000
Intake Information Group TTY:  (800) 669-6820
Greenville Status Line:  (866) 408-8075
Direct Dial:  (864) 241-4401
TTY (864) 241-4403
FAX (864) 241-4416
Website:  www.eeoc.gov

EEOC Charge No. 524-2019-01604

Jessica Norris
108 Dove Tree Trail
Sunset, SC  29685                                    Charging Party

NOVARTIS PHARMACEUTICALS CORP.
One Health Plaza
East Hanover, NJ  07936                          Respondent

## DETERMINATION

I issue the following determination on the merits of this charge.  Respondent is an employer within the meaning of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. 2000-e *et seq*. Timeliness, deferral, and all other requirements for coverage have been met.

Charging Party alleges Respondent violated Title VII by discriminating against her through wages, benefits, harassment, and discharged her based on race, White, sex, Female, and in Retaliation for opposing discrimination. Respondent denies all allegations and claims the termination of Charging Party's employment resulted from poor performance.

An examination of the evidence supports Charging Party's discharge claim and does not support Respondent's defenses.  Charging Party was employed as a Dermatology Senior Sales Specialist. At all relevant times, Charging Party's performance met or exceeded Respondent's legitimate job expectations. Her performance was consistently better than a male comparator.  Furthermore, Charging Party was rated 14th among all the Dermatology Senior Sales Specialists across the nation shortly before her termination.  Performance evaluations also demonstrate Charging Party to have superior performance than at least one male comparator who was treated better than Charging Party, specifically as the male comparator was not placed on a Performance Improvement Plan nor terminated.  Accordingly, the evidence supports a finding of cause as to Charging Party's discharge claim, based on sex.

The Commission finds that the evidence is insufficient to substantiate Charging Party's allegations of race discrimination, retaliation, or discrimination through wages, benefits, or harassment.  This finding does not, however, certify that the Respondent is in compliance with  Title VII with regard to these allegations.

Upon finding there is reason to believe a violation has occurred, the Commission attempts to eliminate the alleged unlawful practice by informal methods of conciliation.  Therefore, the

Determination
Charge No. 524-2019-01604C
Page 2

Ex. 2 p. 2 of 2

Commission now invites the parties to join with it in reaching a just resolution of this matter. The confidentiality provisions of Sections 706 and 709 of Title VII, Section 107 of the ADA, and Commission Regulations apply to information obtained during the conciliation.

If the Respondent declines to discuss settlement or when, for any other reason, a settlement acceptable to the Office Director is not obtained, the Director will inform the parties and advise them of the court enforcement alternative to aggrieved persons and the Commission. A Commission representative will contact each party in the near future to begin conciliation.

You are reminded that Federal law prohibits retaliation against persons who have exercised their right to inquire or complain about matters they believe may violate the law. Discrimination against persons who have cooperated in Commission investigations is also prohibited. These protections apply regardless of the Commission's determination on the merits of the charge.

On Behalf of the Commission:

Patricia B.
Fuller

Digitally signed by
Patricia B. Fuller
Date: 2022.01.06
12:38:52 -05'00'

January 6, 2021

Date

Patricia Fuller
Director, Greenville Local Office

cc:     M. Scott McIntyre
        Partner
        Baker Hostetler
        312 Walnut Street | Suite 3200
        Cincinnati, OH 45202-4074
        smcintyre@bakerlaw.com

        Caryn M. Groedel, Esq.
        OSBA Certified Specialist in Labor
        & Employment Law
        31340 Solon Road, Suite 27
        Cleveland, OH  44139
        cgroedel@groedel-law.com

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

Landmark Building
301 North Main Street, Suite 1402
Greenville, SC  29601
Intake Information Group:  (800) 669-4000
FAX (864) 241-4416
Website:  www.eeoc.gov

Charge Number: 524-2019-01604

Ms. Jessica B. Norris
108 Dove Tree Trail
Sunset, SC 29685                              Charging Party

Novartis Pharmaceuticals Corp.
220 E Hanover Ave.
Morris Plains, NJ 07950                      Respondent

# NOTICE OF CONCILIATION FAILURE

The Commission has determined that efforts to conciliate this charge as required by Title VII of the Civil Rights Act of 1964 as amended (Title VII) have been unsuccessful.   This letter is the notice required by §1601.25 of the Commission's Regulations, which provides that the Commission shall notify a Respondent in writing when it determines that further conciliation efforts would be futile or non-productive. No further efforts to conciliate this case will be made.

The Commission has determined that it will not bring a lawsuit against the above-named Respondent. The issuance of the enclosed Notice of Right to Sue concludes the processing of this charge by the Commission.

On Behalf of the Commission:

*Patricia B. Fuller*

Patricia B. Fuller
Director

cc:    Caryn Markowitz Groedel                Scott M McIntyre
       Counsel for Charging Party              Counsel for Respondent
       cgroedel@groedel-law.com               smcintyre@bakerlaw.com

Ex. 3, p. 2 of 5

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Greenville Local Office**
301 N. Main Street, Suite 1402
Greenville, SC  29601
(864) 565-0340
Website:  www.eeoc.gov

## <u>CONCILIATION FAILURE AND NOTICE OF RIGHTS</u>
(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 04/15/2022

**To:** Ms. Jessica B. Norris
108 Dove Tree Trail
SUNSET, SC 29685

Charge No: 524-2019-01604

EEOC Representative and email:   Gregory Somers
Bilingual Investigator
Gregory.Somers@eeoc.gov

## CONCILIATION FAILURE OF CHARGE

To the person aggrieved: This notice concludes the EEOC's processing of the above-numbered charge. The EEOC found reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in the charge but could not obtain a settlement with the Respondent that would provide relief for you. In addition, the EEOC has decided that it will not bring suit against the Respondent at this time based on this charge and will close its file in this case. This does not mean that the EEOC is certifying that the Respondent is in compliance with the law, or that the EEOC will not sue the Respondent later or intervene later in your lawsuit if you decide to sue on your own behalf.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 524-2019-01604.

On behalf of the Commission,

Patricia B.
Fuller

Digitally signed by
Patricia B. Fuller
Date: 2022.04.15
15:53:31 -04'00'

Patricia B. Fuller
Director

Ex. 3, p. 3 of 5

**cc:**

Scott M McIntyre
Counsel
BakerHostetler
smcintyre@bakerlaw.com

Caryn Groedel
Counsel
CARYN GROEDEL &
ASSOCIATES CO., LPA
cgroedel@groedel-law.com

Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

Ex. 3, p. 4 of 5

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a FOIA Request or 2) a Section 83 request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your request for the charge file promptly to allow sufficient time for EEOC to respond and for your review. Submit a signed written request stating it is a "FOIA Request" or a "Section 83 Request" for Charge Number 524-2019-01604 to the District Director at Thomas M. Colclough, 129 West Trade Street Suite 400

Charlotte, NC 28202.

You can also make a FOIA request online at https://eeoc.arkcase.com/foia/portal/login.

Enclosure with EEOC Notice of Closure and Rights (01/22)

## Ex. 3, p. 5 of 5

You may request the charge file up to 90 days after receiving this Notice of Right to Sue.  After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA Requests and Section 83 Requests, go to: https://www.eeoc.gov/eeoc/foia/index.cfm.